**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

JASON SMIDT,

    Plaintiff

    V.

PRUDENTIAL LIFE INSURANCE COMPANY OF AMERICA AND NISOURCE INC. LONG TERM DISABILITY PLAN,

    Defendants

CIVIL ACTION NO.

## **COMPLAINT**

1. Plaintiff, Jason Smidt ("Mr. Smidt") brings this action against the Defendants, Prudential Life Insurance Company of America ("Prudential") and the NiSource Inc. Long Term Disability Plan ("Plan") (collectively referred to as "Defendants"), for violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA"). Mr. Smidt is a participant in an ERISA welfare benefit plan insured and administered by Prudential.

2. Mr. Smidt is filing this action to recover long-term disability ("LTD") benefits due to him under the Plan, to enforce the present rights existing under the Plan, and to clarify his rights under the terms of the Plan. Mr. Smidt also seeks to recover attorney's fees and costs pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g) and prejudgment interest pursuant to Massachusetts law.

3. Mr. Smidt challenges the Defendants': 1) unreasonable and unlawful termination of Mr. Smidt's LTD benefits despite the substantial medical and vocational evidence

1

demonstrating Mr. Smidt's qualification for said benefits; 2) repeated pattern of rejecting and failing to engage with the substantial evidence supporting Mr. Smidt's disability in an effort to limit Defendants' financial exposure for Mr. Smidt's claim; 3) failure to provide Mr. Smidt with a full and fair review of his claim for LTD benefits; and 4) failure to provide a reasonable claims procedure that would yield an impartial decision on the merits of Mr. Smidt's LTD claim.

## JURISDICATION AND VENUE

4. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"), in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan, which, in this case, consists of a group long-term disability insurance plan underwritten by Prudential for the benefit of employees of NiSource, which includes Mr. Smidt.

5. Additionally, this action may be brought before this court pursuant to 28 U.S.C. 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

6. ERISA provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal of benefit denials. Those avenues of appeal have been exhausted.

7. Venue is proper in this district as Prudential is located in this district, many of the events and occurrences relevant to this matter occurred within this district, and the Defendants conduct business in this district.  29 U.S.C. § 1132(e)(2); 28 U.S.C. § 1391.

**PARTIES**

8. Mr. Smidt was a resident of Massachusetts when he became disabled and began receiving benefits from Defendants under the Plan. Mr. Smidt is a vested participant in Defendants' employee benefit plans, within the meaning of 29 U.S.C. § 1002(2)(7). Mr. Smidt has standing to bring this action under 29 U.S.C. § 1132(a).

9. The defendant, Prudential, is a for-profit insurance company, with its principal place of business in Newark, New Jersey. Prudential transacts business in Massachusetts and administers and insures the Plan under which Mr. Smidt is suing.

10. At all times relevant to the claims asserted in this Complaint, Prudential purported to act as an ERISA claims fiduciary with respect to participants of the Plan generally, and more specifically with respect to Mr. Smidt, within the meaning of ERISA.

11. The Plan under which Mr. Smidt is suing is an "employee welfare benefits plan" as defined by ERISA, 29 U.S.C. §1002(1).

**STATEMENT OF FACTS**

**Relevant Plan Terms**

12. As an employee of Columbia Gas of Massachusetts, a subsidiary of NiSource, Mr. Smidt was eligible for LTD coverage under a contract of insurance with Prudential.

13. The Plan is administered by Prudential.

14. The Plan contains a narrow definition of disability Mr. Smidt must meet to prove his eligibility for benefits.

15. As a result of the functional limitations imposed by his condition, Mr. Smidt has met his burden of proving he is unable to perform the material and substantial duties of his regular occupation or any gainful occupation, with or without accommodations.

16. Mr. Smidt has met his burden of proving that he meets the Plan definition of disability and is therefore eligible for LTD benefits under the terms of the Plan.

17. Neither the Plan nor Prudential has any administrative processes and safeguards (as those terms are used in 29 C.F.R. §2560.503-1) in place to ensure and to verify appropriately consistent decision making.

18. The Plan does not confer discretion on Prudential to determine eligibility for benefits or to interpret the terms of the Plan.

19. Any discretion that may be contained in the Plan was not delegated to Prudential.

20. The judicial standard of review of this matter is de novo.

**Defendants' Conflict of Interest**

21. Prudential's financial conflict of interest as the payor of Mr. Smidt's benefits infected its decision to terminate Mr. Smidt's LTD benefits, and its handling of Mr. Smidt's claim.

22. Prudential's conflict of interest is exemplified, in part, by the following:

   1) its reliance on biased medical reviewers to justify its termination of Mr. Smidt's benefits;

   2) its termination of Mr. Smidt's claim despite the lack of improvement in his condition;

   3) its deference to its own record reviewing physicians to uphold the denial of Mr. Smidt's benefits, while unreasonably dismissing the opinions of Mr. Smidt's treating physicians whose opinions were supported by independent evaluations and unbiased third parties;

   4) its failure to consider medical evidence submitted by Mr. Smidt in support of his claim;

5)    its failure to consider vocational evidence submitted by Mr. Smidt in support of his claim and to conduct the vocational review required by the Plan; and

6)    its failure to address the vocational evaluations of Mr. Smidt's claim even though the standard of disability is based on his inability to perform the duties of any gainful occupation.

23.    Defendants failed to "conduct[] [themselves] as a true fiduciary attempting to fairly decide a claim, letting the chips fall as they may[]" in its review of Mr. Smidt's claim. *Lavery v. Restoration Hardware Long Term Disability Benefits Plan*, 937 F.3d 71, 79 (1st Cir. 2019).

**Mr. Smidt's condition and application for long-term disability benefits.**

24.    Mr. Smidt was a meter technician at Columbia Gas of Massachusetts at the time he became disabled.

25.    Mr. Smidt was forced to stop working on April 15, 2019 due to symptoms of his debilitating illness, which prevented him from performing the duties of his occupation.

26.    Mr. Smidt applied for and was granted long-term disability benefits from Prudential effective October 14, 2019 as a result of his inability to perform the material and substantial duties of his regular occupation.

27.    Prudential's December 18, 2019 approval letter noted that while Mr. Smidt's policy required him to apply for Social Security Disability ("SSDI") benefits if Prudential determined that he might be eligible, Prudential had not considered him to be eligible for SSDI benefits at that time.

28.    On May 27, 2020, Prudential sent Mr. Smidt a follow-up letter stating that its December 18, 2019 approval letter had requested that Mr. Smidt apply for SSDI benefits. This was false. Nevertheless, Prudential notified Mr. Smidt that if he did not submit an SSDI

application by June 27, 2020, it would apply a $2,167.00 offset to his claim.

29. Mr. Smidt applied for SSDI benefits utilizing Prudential's vendor as outlined in its May 27, 2020 letter.

30. On information and belief, Prudential, and its Social Security vendor, would not have required Mr. Smidt to apply for SSDI benefits, and to pursue his claim, if they did not believe he qualified for SSDI benefits.

31. On information and belief, Prudential paid its Social Security vendor to represent Mr. Smidt in his claim for SSDI benefits.

32. To qualify for SSDI benefits, Mr. Smidt must demonstrate an inability to perform the duties of any occupation.

33. If Prudential did not believe Mr. Smidt was unable to perform the duties of any occupation but required him to pursue his claim and paid for representation for him to do so, Prudential would be perpetuating a fraud against the government.

34. SSDI benefits are an offset to Prudential's financial responsibility for Mr. Smidt's LTD benefits under the terms of the Plan.

**Defendants' review of Mr. Smidt's claim.**

35. After twenty-four months, the Policy definition of disability changed to require Mr. Smidt to prove that he was unable to perform the duties of any gainful occupation for which he is reasonably fitted by education, training, or experience.

36. On October 13, 2021, one day before the policy definition change went into effect, Prudential terminated Mr. Smidt's claim for long-term disability benefits effective October 14, 2021, stating: "Your claim for LTD benefits has been terminated effective October 14, 2021 because we determined that the medical information received did not support

impairment that would prevent you from performing the material and substantial duties of any gainful occupation."

37. There was no change or improvement in Mr. Smidt's condition from October 14, 2019 to October 13, 2021.

38. Prudential's October 13, 2021 decision was based solely on a review of his medical records conducted by its nurse reviewer, Melissa J. Farrar, RN, BSN. Ms. Farrar opined that "The available information does not support the claimant's inability to return to sustained capacity."

39. As Ms. Farrar's opinion differed from that of Mr. Smidt's treating provider, she sent a letter to Mr. Smidt's primary care provider. Mr. Smidt's provider disagreed with Ms. Farrar's opinion and provided a statement along with updated records.

40. In response to the opinion of Mr. Smidt's treating provider and updated medical records, Ms. Farrar opined, "Based on the available information, the attached documentation does not alter the prior assessment."

41. Prudential used the restrictions opined by Ms. Farrar to perform an employability assessment, which identified three light duty occupations for which it asserted that Mr. Smidt would be suited.

42. On or about November 12, 2021, Mr. Smidt submitted a self-appeal of Prudential's denial, including letters from his primary care provider and his specialist. Mr. Smidt also contended that the frequency and duration of the breaks he required were not suitable with any reasonable employment.

43. The Plan requires Mr. Smidt to prove that he is unable to perform the duties of any gainful occupation.

44. Mr. Smidt's education, training, and experience, combined with his medical restrictions, prevent him from performing the duties of any gainful occupation.

45. Mr. Smidt's functional limitations prevent him from performing the duties of any gainful occupation.

46. Mr. Smidt's functional limitations were confirmed by his treatment providers.

47. On or about December 30, 2021, March 21, 2022 and May 10, 2022, Prudential provided Mr. Smidt with medical reviews by Ioana Bina, MD and James Slayton, MD for review and response.

48. Dr. Bina is a physician licensed in the state of California and does not hold a Massachusetts license to practice medicine.

49. Dr. Bina opined in her December 28, 2021 report that, "…[W]ith restroom access, there are no reasons why the claimant is unable to work. I opine that his prognosis is good if the medical and psychiatric care can be optimized."

50. On August 4, 2022, Prudential upheld its termination of Mr. Smidt's benefits based on the reports of its peer reviewers.

51. Prudential's August 4, 2022 denial letter provided Mr. Smidt with the option to file a second voluntary appeal to Prudential's Appeals Review Unit for a final decision.

52. On December 6, 2023 and January 5, 2024, counsel for Mr. Smidt submitted an appeal to Prudential's Appeals Review Unit, including a sworn statement from Mr. Smidt, updated medical information from his treating providers, and a vocational report from an independent vocational expert.

53. On December 6, 2023, January 5, and January 25, 2024, counsel for Mr. Smidt requested the right to review and respond to any reviews conducted on appeal.

54. On January 11, 2024, Prudential refused to disclose its reviews conducted on appeal claiming that since the secondary appeal was voluntary, Prudential was not required to provide Mr. Smidt with the opportunity to review and respond to its reviews.

55. On February 20, 2022, Prudential upheld its denial of Mr. Smidt's benefits based on the reports of its undisclosed medical and vocational reviewers.

56. Prudential's February 20, 2022 termination letter failed to engage with the vocational report submitted on second appeal, instead giving deference to its own vocational analysis due to the fact that the independent vocational reviewer relied on the restrictions and limitations opined by Mr. Smidt's treating providers rather than those of Prudential's medical reviewers.

57. Judge Richard Stearns of the United States District Court for the District of Massachusetts, noted in *Martin v. Polaroid Corporation Long Term Disability Plan,*

> While it is true ... that a claimant bears the burden of proving disability, ... the claims process is not an adversarial one, but a collaborative effort on the part of the claimant and the plan administrator, the ultimate goal of which is not to trick a claimant out of benefits that [s]he deserves because of a failure on his part to square every corner, but to achieve a result that is fair to both the claimant and the Plan.

*Martin v. Polaroid Corporation Long Term Disability Plan*, 2004 WL 1305661 At *

(May 27, 2004).

58. Defendants' review of Mr. Smidt's claim was adversarial in nature.

**Summary of Defendants' Review of Mr. Smidt 's Claim.**

59. Mr. Smidt has exhausted his administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

60. Mr. Smidt's disability and eligibility for LTD benefits is based on the substantial evidence in Defendants' possession.

61. Mr. Smidt's condition had not changed, nor had it improved, at the time Defendants terminated his claim for benefits.

62. Since the onset of his disability, Mr. Smidt has been and remains unable to perform the duties of any gainful occupation due to his condition. Mr. Smidt's impairments are chronic and have not improved in any material respect despite extensive treatment.

63. As a result, Mr. Smidt is entitled to the reinstatement of his benefits with payment of all benefits in arrears with 12% interest, along with continuation of payments so long as he meets the Policy's definition of "disabled."

64. Defendants and their medical reviewers arbitrarily dismissed Mr. Smidt's symptoms and functional limitations when they determined that Mr. Smidt was not disabled.

65. Defendants failed to have Mr. Smidt's claim assessed by a medical provider with the appropriate credentials to evaluate his eligibility for benefits as required by ERISA's implementing regulations.

66. Defendants failed to address or evaluate the clinical findings of Mr. Smidt's treating and evaluating physicians regarding Mr. Smidt's symptoms, restrictions, functional limitations, and disability.

67. Defendants failed to conduct a reasonable vocational review of Mr. Smidt's ability to perform the duties of any gainful occupation, as required by the terms of the Plan.

68. Not one of the numerous providers to examine and to treat Mr. Smidt concluded that he was exaggerating his symptoms, or that his symptoms were incongruent with the objective testing or their findings on clinical examinations. As the Seventh Circuit noted in *Carradine v. Barnhart,* 360 F.3d 751 (7th Cir. 2004):

What is significant is the improbability that [the claimant] would have undergone the pain-treatment procedures that she did, which included ... heavy doses of strong

drugs ..., merely in order to strengthen the credibility of her complaints of pain and so increase her chances of obtaining disability benefits; likewise the improbability that she is a good enough actress to fool a host of doctors and emergency-room personnel into thinking she suffers extreme pain; and the (perhaps lesser) improbability that this host of medical workers would prescribe drugs and other treatment for her if they thought she were faking her symptoms. Such an inference would amount to an accusation that the medical workers who treated [the claimant] were behaving unprofessionally. *Id.* at 755 (internal citation omitted).

69. While Defendants are permitted to defer to the opinions of their reviewing physicians, Defendants' unquestioned reliance upon their opinions was unreasonable, particularly in light of treatment records and a vocational report supporting Mr. Smidt's disability. Moreover, when the reviewing doctors' opinions are factored in with Defendants' unsupported dismissal of the opinions of Mr. Smidt's treating providers, the only conclusion to be drawn is that Defendants' decision was arbitrary and capricious and wrong.

70. By refusing to engage with information Defendants acknowledged was thorough and required to complete its review, *i.e.*, evidence Mr. Smidt's symptoms impacted his functionality, Defendants proved that their financial conflict of interest impacted their decision to terminate Mr. Smidt's benefits and was unreasonable. *See Petrone v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson and Affiliated Cos.*, 935 F.Supp. 2d 278, 293 (D.Mass. 2013) (an "administrator cannot simply ignore contrary evidence, or engage with only that evidence which supports his conclusion.").

71. Defendants failed to meet the minimum requirements for the termination of Mr. Smidt's LTD benefits, in violation of ERISA, 29 U.S.C. 1133, which requires that upon a denial of benefits, the administrative review procedure must include adequate notice in writing

setting forth the specific reasons for the denial of benefits and a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

72.   Defendants failed to meet the notice requirements required by ERISA's implementing regulations. In particular, Defendants' adverse determination letters failed to articulate the basis for the decision to terminate benefits, failed to contain a full discussion of why Mr. Smidt's claim was terminated, and failed to detail the standard behind the decision.

73.   Defendants failed to meet the Plan's requirements for review of claims that have been terminated.

74.   Defendants failed to provide Mr. Smidt with a full and fair review of his claim for LTD benefits.

75.   Defendants failed to respond to Mr. Smidt's attempts to engage in a meaningful dialogue regarding the evaluation of his claim for LTD benefits.

76.   Defendants routinely ignored communications from Mr. Smidt regarding his claim for LTD benefits.

77.   Defendants relied on information it was aware was false in terminating Mr. Smidt's benefits.

78.   Defendants failed to engage with the objective evidence supporting Mr. Smidt's disability.

79.   Any discretion to which Defendants may claim they entitled under the terms of the Plan is negated by its failure to provide Mr. Smidt with an explanation as to its adverse action as proscribed by ERISA and its implementing regulations.

80.   Any discretion to which Defendants may claim they entitled under the terms of the Plan is negated by its failure to provide Mr. Smidt with a full and fair review of his claim.

81. Defendants failed to disclose all the internal guidance available to claims representatives in evaluating Mr. Smidt 's claims despite Mr. Smidt's request for this information, and despite ERISA's implementing regulations' requirement to disclose this information.

82. The decision to terminate Mr. Smidt's LTD benefits was self-serving, wrongful, unreasonable, irrational, solely contrary to the evidence, contrary to the terms of the Plan, and contrary to law.

83. Defendants were influenced by their financial conflict of interest when they terminated Mr. Smidt's LTD benefits and failed to provide him with the full and fair review of his claim required by law.

84. Due to the unlawful termination of benefits under ERISA, Mr. Smidt has lost his rightful LTD benefits. He has also suffered emotional and financial distress as a result of the Defendants' actions.

85. As a result of the denial of his claim for LTD benefits, Mr. Smidt has lost the use of his LTD benefits.

86. Mr. Smidt is entitled to restitution for the loss of his benefits at the Massachusetts statutory 12% interest rate.

**FIRST CAUSE OF ACTION**
**(Enforcement of Terms of Plan**
**Action for LTD Benefits)**
**(ALL DEFENDANTS)**

87. Mr. Smidt realleges each of the paragraphs above as if fully set forth herein.

88. The Plan is a contract.

89. Mr. Smidt has performed all his obligations under the contract.

90. 29 U.S.C. § 1132(a) states that:

    (a) A civil action may be brought ---

1.     by a participant or beneficiary –

    A.  for the relief provided for in subsection (c) of this section, or

    B.  to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

91.    Defendants' actions constitute an unlawful termination of disability benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

92.    Defendants unlawfully terminated Mr. Smidt's LTD benefits in part by: (1) dismissing without explanation, the substantial evidence supporting Mr. Smidt's claim for LTD benefits; and (2) denying Mr. Smidt a full and fair review of their decision to terminate his claim for benefits.

93.    In accordance with 29 U.S.C. §1132, Mr. Smidt is entitled to LTD benefits under the terms of the Plan until he is no longer disabled or reaches 67 years of age, as promised under the Plan.

94.    Defendants have refused to provide Mr. Smidt with his disability benefits and are, therefore, in breach of the terms of the Plan and ERISA, which require that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the participants of the Plan.

95.    As a direct and proximate result of this breach, Mr. Smidt has lost the principal and the use of his rightful disability benefits.

**SECOND CAUSE OF ACTION**
**(Attorneys' Fees and Costs)**
**(ALL DEFENDANTS)**

96.    Mr. Smidt realleges each of the paragraphs above as if fully set forth herein.

97.    Under the standards applicable to ERISA, Mr. Smidt deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

98.    Defendants have the ability to satisfy the award.

99.    Mr. Smidt's conduct of this action is in the interests of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

100.    Mr. Smidt's conduct of this action is in the interests of individuals participating in ERISA plans where the plan administrators have violated ERISA's implementing regulations for their own financial benefit.

101.    Mr. Smidt's conduct of this action is in the interests of all individuals participating in ERISA plans whose claims were denied or terminated.

102.    Mr. Smidt's conduct of this action is in the interests of all individuals who lack the financial ability to pursue their claims for benefits as a result of the denial of their disability benefits.

103.    Defendants have acted in bad faith in terminating Mr. Smidt's disability benefits under the Plan.

104.    The award of attorneys' fees against Defendants will deter others acting under similar circumstances.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1)    Declare, adjudge, and decree that Mr. Smidt is entitled to retroactive and ongoing LTD benefits as calculated under the terms of the Plan;

(2)    Award Mr. Smidt disability benefits and 12% interest from the dates of the Defendants' breach of contract;

(3)     Declare, adjudge, and decree Mr. Smidt was entitled to LTD benefits to which he

        is entitled as a disabled individual under the terms of the Plan;

(4)     Order that the Defendants make restitution to Mr. Smidt in the amount of all losses

        sustained by Mr. Smidt as a result of the wrongful conduct alleged herein, together

        with 12% prejudgment interest;

(5)     Award Mr. Smidt the costs of this action and reasonable attorneys' fees; and

(6)     Award such other relief as the court deems just and reasonable.


Date:   June 8, 2024                              Respectfully submitted for the Plaintiff,


                                    By:     /s/ Mala M. Rafik
                                            Mala M. Rafik
                                            BBO No. 638075
                                            Socorra A. DeCelle
                                            BBO No. 688197
                                            Mala M. Rafik
                                            BBO No. 638075
                                            ROSENFELD & RAFIK, P.C.
                                            184 High Street, Suite 503
                                            Boston, MA 02110
                                            T: 617-723-7470
                                            F: 617-227-2843
                                            E: mmr@rosenfeld.com
                                               sad@rosenfeld.com